Case 05-62659    Filed 06/12/06    Doc 175

**POSTED ON WEB SITE**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re<br><br>Charles W. Briggs,<br><br>        Debtor.<br><br>Scripps Investments & Loans, Inc., Charles E. Scribner and Geraldine Y. Scribner, Trustees of The Scribner Family Trust dated 7/1/04, et al.,<br><br>        Moving Parties,<br><br>v.<br><br>Charles W. Briggs,<br><br>        Respondent. | Case No. 05-62659-B-11<br><br>DC No. BMJ-1<br><br><br>FILED<br>JUN 1 2 2006<br>UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF CALIFORNIA |

**MEMORANDUM DECISION REGARDING MOTION FOR TERMINATION OF AUTOMATIC STAY**

Albert J. Berryman, Esq., of Baker, Manock & Jensen, P.C., appeared on behalf of the movant, Scripps Investments & Loans, Inc., et al.

Michael T. Hertz, Esq., of Lang, Richert & Patch appeared on behalf of the debtor, Charles W. Briggs.

      The debtor, Charles W. Briggs ("Briggs"), owns 50% of the membership interest in AB Parking Facilities, LLC, a California limited liability company (the "AB Memberships"). Scripps Investments & Loans, Inc., et al. ("Scripps Investments") moves for relief from the automatic stay to foreclose a personal property security interest it holds against the AB Memberships. For the reasons set forth below, the motion will be denied.

      The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 362(d)(1) and (d)(2). This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G). This Memorandum Decision contains the court's findings of fact and conclusions of law.

175

**Background**

Briggs is an owner of AB Parking Facilities, LLC ("AB Parking"). AB Parking, in turn, owns a commercial building known as the Guarantee Savings Building and an adjacent parking structure (together, the "Guarantee Buildings"). AB Parking is deeply in debt and the Guarantee Buildings are heavily encumbered. Briggs personally guaranteed millions of dollars of debt to Scripps Investments, some or all of which is secured by deeds of trust against the Guarantee Buildings.

The Guarantee Buildings are the subject of a non-judicial foreclosure and a judicial foreclosure/receivership action being prosecuted by a secured creditor and related entity, Scripps GSB I, LLC ("Scripps GSB")[1] in the Superior Court of California for the County of Fresno (the "Receivership Action").[2] On June 5, 2006, this court granted relief from the automatic stay in the chapter 11 bankruptcy of A Partners, LLC ("A Partners" - case number 06-10069) to permit Scripps GSB to proceed with its non-judicial foreclosure against the Guarantee Buildings (the "Scripps GSB Order"). The interrelated debt structure of A Partners and AB Parking, and the likely economic consequences of Scripps GSB's foreclosure are described in more detail in this court's Memorandum Decision filed in support of the Scripps GSB Order. That Memorandum Decision is incorporated herein for reference.

The financial difficulties of AB Parking are relevant here because if Scripps

---

[1] Scripps GSB and Scripps Investments appear to be closely related entities. Scripps Investments is the managing entity for Scripps GSB. They are both represented in this proceeding by the same law firm.

[2] There is a dispute in the State court over whether the Receivership Action is stayed by the filings of this bankruptcy, the chapter 11 bankruptcy of Mauldin-Dorfmeier Construction, Inc. and the chapter 11 bankruptcy of A Partners, LLC. Mauldin-Dorfmeier was the holder of the fourth priority lien against the Guarantee Buildings. A Partners holds the fifth priority trust deed against the Guarantee Buildings. A Partners was not named as a defendant in the Receivership Action. The question of whether the Receivership Action is proceeding in violation of the automatic stay has not been presented to this court for resolution.

GSB successfully completes its foreclosure against the Guarantee Buildings, that will extinguish the junior liens which secure the debt to Scripps Investments. Scripps Investments contends that the Guarantee Buildings have an appraised value of approximately $22 million, which is far less than the total debt secured by the Guarantee Buildings. Briggs is a licensed real estate broker. He contends that AB Parking is negotiating a sale of the Guarantee Buildings to a bona fide purchaser for $60 million to $70 million; enough to pay the debt which Briggs guaranteed. If this court grants the motion before it, Scripps Investments, together with Scripps GSB, will essentially control AB Parking and all possibilities for liquidation or refinance of the Guarantee Buildings. Briggs states that he cannot remain in chapter 11 and pay the debt to Scripps Investments, with no apparent recourse against AB Parking for indemnity or damages.

**Applicable Law**

Scripps Investments moves for relief under 11 U.S.C. § 362(d),[3] which provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if–
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

Pursuant to § 362(g), Scripps Investments has the burden of proof on the issue of Briggs' equity in the AB Memberships. Briggs has the burden of proof on

---

[3] Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated after the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

3

all other issues. Although Briggs has the burden of proof on the issue of "cause," Scripps Investments has the initial burden to produce some evidence to establish that there are some facts to support its allegation of "cause." *Tirey Distributing Company v. Sloan (In re Tirey Distributing Co.)*, 242 B.R. 717, 723 (Bankr. E.D. Okla. 1999) (quoting *In re Tursi*, 9 B.R. 450, 453 (Bankr. E.D. Pa. 1981)).

**Analysis**

The concept of "equity" in property is based on the premise that the property itself has some economic value to its owner. "Equity" is defined as "[t]he amount by which the value of or an interest in property exceeds secured claims or liens; the difference between the value of the property and all encumbrances upon it." BLACK'S LAW DICTIONARY 580 (8th ed. 2004).

Scripps Investments argues that the value of the AB Memberships should be based solely upon the appraised value of AB Parking's only significant asset, the Guarantee Buildings. If that is true, and if AB Parking is as financially upside down as Scripps Investments contends, then the AB Memberships have no economic value to anybody, including Scripps Investments, and it is not clear why Scripps Investments needs relief. Scripps Investments argues that it wants to sell the AB Memberships and apply the proceeds to the obligations guaranteed by Briggs. However, Scripps Investments offers no evidence to suggest that the AB Memberships can be sold for enough money to significantly reduce the debt. For that matter, there is no evidence that the AB Memberships can be sold in a foreclosure for anything. On the face of Scripps Investments' argument, a foreclosure against the AB Memberships would be a futile and meaningless act.

If the AB Memberships have no economic value, then adequate protection for Scripps Investments' security interest in the AB Memberships is not an issue. There is no income being generated from the AB Memberships. The AB Memberships themselves are not going to be removed or lost. Scripps Investments makes no showing that the value of its security interest in the AB Membership is

4

deteriorating or at risk.

The true equity, or "value" of the AB Memberships is not a function of the book value of AB Parking's assets. There is an intangible attribute to the AB Memberships, which is potentially much more important to this case than the appraised value of any buildings; that is Briggs' ability to participate in the management and control AB Parking.[4] Scripps Investments did not discuss, acknowledge, or produce any evidence relating to this issue. Scripps Investments had the burden of proof on the question of the Debtor's "equity" and it has failed to persuade the court that Briggs' ability to participate in the management of AB Parking has no value to Briggs.

For the same reasons, the court is persuaded, at least for now, that the AB Memberships are necessary to Briggs' reorganization effort. Briggs states in his declaration that AB Parking has received bona fide letters of intent to purchase the Guarantee Buildings for enough to pay AB Parking's secured debt. If Scripps Investments completes its quest to own 100% of AB Parking, there is no assurance that any of those potential sales will proceed in good faith to reduce or pay the guaranteed debt. The only apparent hope of saving, or realizing any benefit from the collateral for the debt to Scripps Investments, is in Briggs' ability to retain some element of management and control in the operations and AB Parking.

Finally, the court is not persuaded that cause exists to grant relief at this time. The term "cause" as used in § 362(d)(1) "is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations." *In re Indian River Estates, Inc.*, 293 B.R. 429, 433 (Bankr. N.D. Ohio 2003) (citing *In re Texas State Optical, Inc.*, 188 B.R. 552, 556

---

[4]The other co-owner of AB Parking was at one time Ronald Allison. There is currently a dispute between Allison and Scripps Investments over a prior foreclosure against Allison's 50% interest in AB Parking. Scripps Investments contends that it now controls Allison's interest in AB Parking. Neither party has offered any evidence to show what control remains with Briggs.

(Bankr. E.D. Tex. 1995)). Factors to consider in determining whether the automatic stay should be modified for cause include: (1) an interference with the bankruptcy; (2) good or bad faith of the debtor; (3) injury to the debtor and other creditors if the stay is modified; (4) injury to the movant if the stay is not modified; and (5) the relative portionality of the harms from modifying or continuing the stay. *In re Tirey Distributing Co.*, 242 B.R. at 723 (citing *Milne v. Johnson (In re Milne)*, 185 B.R.. 280 283 (D.C. N.D. Ill. 1995)).

Applying the "cause" factors to this case, the court notes first that there is no allegation or evidence to suggest any bad faith by Briggs. Briggs will not be able to reorganize in chapter 11 if he cannot participate in AB Parking's effort to sell or refinance the Guarantee Buildings to pay the debts which Briggs guaranteed. Scripps Investments makes no showing that it will suffer any injury if it cannot foreclose on the AB Memberships. There is no need to physically protect the assets of AB Parking; the Guarantee Buildings are already being protected in the Receivership Action. The AB Memberships were pledged to Scripps Investments as collateral for a personal guarantee, not the underlying obligation. The amount of any deficiency to Scripps Investments will not be known until, *inter alia*, the fate of the Guarantee Buildings becomes more clear. A sale of the AB Memberships will not significantly reduce the debt to Scripps Investments. Unless Scripps Investments is willing to release Briggs from any personal liability on his guarantees, the court cannot find that it is fair and equitable to give Scripps Investments, and its related entity, Scripps GSB, total control over AB Parking, the only entity with the ability to liquidate the only asset that stands between Briggs and a chapter 7.

///

///

///

///

**Conclusion**

Based on the foregoing, the court is not persuaded that cause exists to grant relief from the automatic stay at this time. Further, the court is not persuaded that Scripps Investments lacks adequate protection for its security interest in the AB Memberships, that the AB Memberships have no economic value to Briggs' bankruptcy estate, and that they are not necessary to Briggs' reorganization effort. The motion for termination of automatic stay will be denied.

Dated: June /2 , 2006

W. Richard Lee
United States Bankruptcy Judge